IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-44-FL

| | | |
|---|---|---|
| GREYSTONE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RETURN: UNITED FUND FOR THE | ) | |
| EDUCATION OF RUSSIAN IMMIGRANT | ) | ORDER |
| CHILDREN IN ISRAEL, INC., a | ) | |
| corporation organized under the laws of the | ) | |
| State of New York; GEORGE RIEDER, an | ) | |
| individual; JOSPEH HOCH, an individual; | ) | |
| AVIVA HOCH, an individual; and, | ) | |
| MORRIS FUCHS, an individual, | ) | |
| | ) | |
| Defendants. | | |

This matter comes before the court on defendants' motion to transfer pursuant to 28 U.S.C.

§ 1404(a) or, in the alternative, to dismiss this case (DE # 17). Plaintiff has filed a response, to

which defendants have replied. The matter also presents itself in accordance with the court's regular

scheduling procedures pursuant to Federal Rule of Civil Procedure 16(b).The issues raised are ripe

for adjudication. For reasons stated more particularly below, defendants' motion is granted in that

part seeking transfer to the Southern District of New York, and denied as to the motion to dismiss.[1]

## BACKGROUND

This dispute arises out of an agreement by plaintiff to loan a sum of money to defendant

---

[1]     Initial pretrial conference was held June 7, 2010, where various case management issues were
discussed, including any resort to alternative dispute resolution. The court stayed issuance of a case management order
for fourteen (14) days thereafter to allow the parties to enter into mediation. The parties have reported that mediation
was unsuccessful. Any order on scheduling should issue now in the district to which this case is transferred

Return: United Fund for the Education of Russian Immigrant Children in Israel, Inc. (hereinafter "Shuvu"[2]). Plaintiff is a corporation organized under the laws of North Carolina. Plaintiff is closely affiliated with Greystone & Co., Inc., a New York corporation with various different Greystone entities under its umbrella, including Greystone Corporate Realty, Greystone Financial Group, and Greystone Loan Servicing. Stephen Rosenberg, who negotiated the loan on behalf of plaintiff, is the President and Chief Executive Officer ("CEO") of Greystone & Co., Inc., and also the primary shareholder and Chairman of the Board of Directors of plaintiff.

Defendant Shuvu is a New York-based charity. Defendant Shuvu does not conduct solicitation activities directed specifically to North Carolina and only one resident of North Carolina currently is included on its mailing list of approximately ten thousand (10,000) individuals.

It is undisputed that in 2008, a representative of defendant Shuvu solicited Mr. Rosenberg to make a charitable donation. Instead of a charitable donation, Mr. Rosenberg agreed to arrange a loan to defendant Shuvu from plaintiff, and to subsidize and pay interest that would accrue on the loan in excess of plaintiff's cost of funds. It appears that certain negotiations took place in Mr. Rosenberg's New York City office which involved only Mr. Rosenberg and the soliciting representative of defendant Shuvu.

Defendants contend that plaintiff was not involved during any negotiation of the terms of the loan, but only became involved in finalizing the loan documents, denominated as follows: "Credit Agreement," "Amended and Restated Promissory Note," "Amended and Restated Guaranty,"and "Undertaking Agreement."

---

[2]     Defendants inform the court that the organization is also known by the Hebrew word "Shuvu," which means "return."

It is undisputed that the individual defendants Morris Fuchs, Joseph Hoch, Aviva Hoch, and George Reider ("the individual defendants"), who live in New York and are supporters of defendant Shuvu, entered into the contract of guaranty made a part of the transaction. They assert that but for Mr. Rosenberg's alleged representation concerning the subsidization of interest, they would not have agreed to guarantee the loan.

None of the guarantors own property in North Carolina. The guaranty agreement, dated January 23, 2009, contains a clause providing that "[a]ny suit hereon may be brought, prosecuted or defended in the courts of Wake County, North Carolina or in the United States District Court for the Southern District of New York." (Compl., Ex. 3 § 4.04.)

Funds in the amount of six million dollars ($6,000,000.00) were issued by plaintiff to defendant Shuvu. Defendant Shuvu also contends that but for Mr. Rosenberg's representation regarding the subsidization of interest, defendant Shuvu would not have agreed to the loan.

The document denominated "Undertaking Agreement" required funds loaned to be secured by "a second ranking mortgage in favour of the Bank" over certain real estate owned by defendant Shuvu "and a lender's policy of title insurance in form and substance acceptable to the Bank." It also was required that defendants establish and maintain a "lock box account," pursuant to which payments received by defendant Shuvu would be placed in an account in which plaintiff would have priority interest.

Plaintiff contends that defendants have not complied with these provisions, and that this noncompliance constitutes a default under the credit agreement and note. Plaintiff filed this action to recover amounts due as a result of defendants' alleged default on obligations owing plaintiff.

3

## DISCUSSION

While defendants seek dismissal for lack of personal jurisdiction, this court can consider and resolve the motions to transfer without first resolving the personal jurisdictional challenges. See In re LimitNone, LLC, 551 F.3d 572, 576 (7th Cir. 2008) (affirming a district court that transferred a case before deciding a motion to dismiss for lack of subject matter jurisdiction because "[t]he relative ease of determining venue before subject matter jurisdiction is an issue of judicial economy" and "the Supreme Court has approved of addressing . . . venue before personal jurisdiction") (citing Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979)); Carte v. Loft Painting Co., Inc., No. 3:08-1004, 2009 WL 589941, at *5 (S.D. W.Va. 2009) (unpublished); Datasouth Computer Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989).

The court does need personal jurisdiction over defendants to transfer this matter pursuant to 28 U.S.C. § 1404. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (holding personal jurisdiction is not required to transfer a case pursuant to § 1406); United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964) (interpreting Goldlawr to apply to § 1404 transfers); Koehring Co. v. Hyde Constr. Co., 324 F.2d 295, 297–98 (5th Cir. 1963) (same); Datasouth Computer Corp., 719 F. Supp. at 450.

Pursuant to 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and in the interest of justice, order the transfer of a case to any district where it might otherwise have been brought. The question of transfer under § 1404 is one committed to the sound discretion of the district court. Southern Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956).

A motion to transfer demands a holistic analysis. The court need not give equal weight to each factor; the transfer analysis is qualitative, not quantitative. Coffey v. Van Dorn Iron Works,

4

796 F.2d 217, 219-20 (7th Cir. 1986); Datasouth Computer Corp., 719 F. Supp. at 450.  Much necessarily must turn on the particular facts of each case, and the trial court must consider and balance all the relevant factors to determine whether the litigation would proceed more conveniently and the interests of justice be better served by transfer to a different forum.  Coffey, 796 F.2d at 219-20 (citing 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3847 (3d ed. 2010)).

While the analysis is case-specific, courts often consider a range of factors, including: plaintiff's initial choice of forum; the residence of the parties; the ease of access to the sources of proof; the convenience of the parties and witnesses; the cost of obtaining the attendance of the witnesses; the availability of compulsory process; the possibility of a view by the jury; the enforceability of a judgment; other practical problems that make trial expeditious and inexpensive; the interest in having local controversies decided at home and at home with the state law that governs; and the interests of justice.  See Landers v. Dawson Constr. Plant, Ltd., 201 F.3d 436, at *2 (4th Cir. 1999) (unpublished table decision); Hardee's Food Sys. v. Rosenblatt, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998).

Plaintiff's initial choice of forum is an important factor and generally should not be disturbed unless the balance is tipped strongly in favor of defendants.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (discussing choice of forum in the context of *forum non conveniens*).  Even if the plaintiff's choice of forum is inconvenient for defendants, "[t]he court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another."  Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc., 933 F. Supp. 507, 513 (M.D.N.C. 1996); see also Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).  Nonetheless, the weight to be given to a

5

plaintiff's choice of venue varies with the significance of the contacts between plaintiff's chosen venue and the underlying cause of action.  See Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) (citing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 30-31 (1988)); Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F.Supp. 1253, 1256 (E.D. Va. 1988).  When the initial forum is not the site of the conduct giving rise to the complaint, plaintiff's choice of forum is given less weight.  See, e.g., In re Factor VIII or IX Concentrate Blood Prods. Litig., 484 F.3d 951, 955-56 (7th Cir. 2007); Parham v. Weave Corp., 323 F. Supp.2d 670, 674 (M.D.N.C. 2004); Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp.2d 741, 743 (E.D. Va. 2003); Mims v. Proctor & Gamble Distributing Co., 257 F. Supp. 648, 656 (D.S.C. 1966).

Here, plaintiff's choice of forum, while important, is given less weight in the court's analysis because of the particular facts of this case.  Though plaintiff is a North Carolina corporation, its ties to New York are numerous and substantial.  Plaintiff is closely affiliated with Greystone & Co., Inc., which is not technically a parent corporation, but plaintiff's website states that plaintiff "makes direct loans and joint ventures with Greystone & Co., Inc."  (See Defs.' Reply Mem. 8.)  Greystone & Co., Inc. is a New York corporation with close relationships to various other entities, such as Greystone Corporate Realty, Greystone Financial Group, and Greystone Loan Servicing.  Plaintiff works closely with its affiliate Greystone companies.  Moreover, plaintiff's chosen forum is not the site of the conduct giving rise to the complaint, and thus receives less weight.  Plaintiff does not dispute that the loan at issue in this case was negotiated on plaintiff's behalf by Mr. Rosenberg his New York office.  In addition to being the President and CEO of Greystone & Co., Inc., Mr. Rosenberg is also Chairman of the Board of Directors of plaintiff Greystone Bank.

Defendants' connection to New York is also substantial. Defendant Shuvu is a New York corporation with its principal place of business in New York. It does not have any operations in North Carolina, does not direct solicitation activities specifically to North Carolina, and only one resident of North Carolina currently is included on defendant Shuvu's mailing list of approximately ten thousand (10,000) individuals. All four individual defendants also reside in New York.

Mr. Rosenberg, who may become a key witness in this case, agreed to extend a loan to Shuvu, which loan was subsequently extended by plaintiff. It appears that plaintiff took no part in the negotiations. It appears, in fact, that defendants reasonably believed they were negotiating with Mr. Rosenberg in his capacity as President and CEO of Greystone & Co., Inc. The underlying loan that is the subject of this action was agreed to in New York and the loan documents were finalized in New York. To the extent that evidence relating to the negotiations becomes relevant, it will likely be found in New York. In sum, it appears that all of the witnesses and evidence that could be relevant in this case is located in New York.

Thus, the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses, the residence of the parties, the relative ease of access of proof, the relative advantages and obstacles to a fair trial, other practical problems that make a trial easy and inexpensive, and the interest in having localized controversies settled at home all weigh in favor of transfer. Though North Carolina law applies to the breach of contract claims, New York law is likely to apply to any counterclaims brought by defendants, and thus the avoidance of unnecessary problems with conflict of laws weighs slightly in plaintiff's favor or is neutral. The possibility of a view, the enforceability of a judgment, and the administrative difficulties of court congestion do not favor either venue. Plaintiff's initial choice of forum does weigh in favor of

7

denying the motion to transfer, but as discussed, it is outweighed by the substantial connection between the parties and events underlying this cause of action and New York. The Southern District of New York better serves the convenience of the parties and the interest of justice than a forum in this court. The permissive language of the venue selection clause in the guaranty reading "[a]ny suit hereon may be brought, prosecuted or defended in the courts of Wake County, North Carolina or in the United States District Court for the Southern District of New York," does not alter the court's analysis, where by its terms, the clause does not limit plaintiff to bringing suit in either of these venues. As such, this also does not factor into the court's transfer analysis.

Plaintiff's initial choice of forum has been given due deference by the court. However, under the unique circumstances presented, transfer to the Southern District of New York, the more convenient forum, is warranted.

## CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED in that part seeking transfer and DENIED as to that part seeking dismissal for lack of personal jurisdiction (DE # 17). It is ORDERED that the action is TRANSFERRED to the United States District Court for the Southern District of New York. The Clerk is DIRECTED to effectuate the transfer forthwith.

SO ORDERED, this the 16th day of July, 2010.

LOUISE W. FLANAGAN
Chief United States District Court Judge